# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOY EVELYN DEGROAT,

       Plaintiff,

       v.                                    Civ. No. 23-90 KK/SCY

MARCOS CORDERO, *et al.*,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss (Doc. 24) ("Motion"), filed November 3, 2023. The Court, having considered the parties' submissions, the record, and the relevant law, FINDS that Defendants' Motion should be GRANTED IN PART and DENIED IN PART as set forth below.

## I. BACKGROUND

Plaintiff Joy Evelyn DeGroat alleges the following facts in her Complaint for Civil Rights Violations, Tort Claims, and Damages (Doc. 1) ("Complaint"), which the Court accepts as true for purposes of Defendants' Motion.[1] In the early morning hours of January 29, 2021, Plaintiff "slid off the road while attempting to avoid an elk or deer" in the middle of New Mexico State Road 53 near Grants, New Mexico. (Doc. 1 at ¶¶ 6, 8.) Plaintiff called 911 for assistance. (*Id.* at ¶ 7.) Officer Marcos Cordero of the New Mexico State Police Department ("NMSP") arrived at the scene at

---

[1] Because Defendants bring their Motion under Federal Rule of Civil Procedure 12(b)(6), the Court analyzes it based on the factual allegations in the Complaint, except as otherwise noted. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("[A] Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."). The Court accepts as true all well-pled factual allegations and views them in the light most favorable to Plaintiff for purposes of analyzing the Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013). However, legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal,* 556 U.S. at 678.

about 3:46 a.m. (*Id.*at ¶ 8.) When he arrived, Plaintiff's vehicle was "parked and/or pulled over on the side of the roadway on a snow embankment" and was not blocking traffic. (*Id.*)

Officer Cordero approached the vehicle and asked Plaintiff what had happened. (*Id.* at ¶ 9.) Plaintiff responded that there was a deer on the road that she tried to avoid. (*Id.*) She also told the officer that "she had consumed 4 or 5 beers at 5:00 or 6:00 [p.m.] that evening … and was not intoxicated." (*Id.*) Although Plaintiff was not "conducting herself in a manner justifying her removal from the vehicle, [Officer] Cordero asked Plaintiff to step out of her vehicle." (*Id.* at ¶ 11.) Plaintiff responded by stating that "she would prefer to stay in her vehicle since it was cold outside" and "she had severe arthritis in her hand." (*Id.* at ¶ 12.)

"Without any warning," Officer Cordero opened Plaintiff's car door and "grabbed" and "pull[ed]" on her arm to "eject" her from her vehicle. (*Id.* at ¶ 13.) Around this time, NMSP Officers Brian Sanchez and Corey Newman arrived at the scene. (*Id.*) Because Officer Cordero was hurting her shoulder as he forced her out of the vehicle, Plaintiff "begged [him] to stop" and told him she needed to go to the hospital. (*Id.* at ¶ 14.) She "hit her head on the pavement as the officer and/or officers forced" or "slammed" her to the ground, using "force … so great that Plaintiff sustained shoulder injuries and other injuries." (*Id.* at ¶¶ 14, 24.) Officer Cordero then double handcuffed her.[2] (*Id.* at ¶ 15.)

---

[2] In Plaintiff's response to Defendants' Motion, Plaintiff's counsel argues facts not alleged in the Complaint, including that: (a) as Officer Cordero was pulling Plaintiff from her vehicle, she tried to grab her purse by reaching through a gap in the steering wheel, where her arm became "stuck"; (b) when Officer Cordero felt the resistance this caused, he "pulled even harder" and "severely damaged [Plaintiff's] shoulder"; and, (c) Plaintiff is petite and in her sixties. (Doc. 30 at 4.) However, because the Court may only evaluate the merits of Defendants' Rule 12(b)(6) Motion based on the facts alleged in the Complaint, the Court will disregard these arguments in its analysis. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations *within the four corners of the complaint* after taking those allegations as true.") (emphasis added); *Mocek v. City of Albuquerque*, 3 F. Supp. 3d 1002, 1048 (D.N.M. 2014), *aff'd*, 813 F.3d 912 (10th Cir. 2015) (noting that, with limited exceptions, "[t]he district court must determine if the complaint alone is sufficient to state a claim; [it] cannot review matters outside of the complaint") (citing *Carter v. Daniels*, 91 F. App'x 83, 85 (10th Cir. 2004)).

Plaintiff's Complaint asserts seven counts against Defendants under 42 U.S.C. § 1983, the Fourth Amendment, and state tort law. (*Id.* at ¶¶ 23-60.) However, in her response to Defendants' Motion, Plaintiff stipulates to the dismissal of all Section 1983 claims against the NMSP and Officers Cordero, Sanchez, and Newman ("Individual Defendants") in their official capacity, as well as Counts II, III, IV, V, and VI of the Complaint. (Doc. 30 at 1-3.) Based on these stipulations, the Court will grant Defendants' Motion insofar as it seeks dismissal of the foregoing claims.

What remains are Counts I and VII against the Individual Defendants in their individual capacities. In Count I, Plaintiff alleges that the Individual Defendants used excessive force against her in violation of her Fourth Amendment rights. (Doc. 1 at ¶¶ 23-28.) In Count VII, she alleges that the NMSP's "employees and/or agents" conspired with Officer Cordero to use excessive force against her. (*Id.* at ¶¶ 56-60.)

In the present Motion, Defendants seek dismissal of Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(4), (5), and (6) and 4(m). (Doc. 24.) In support of their request for dismissal of Plaintiff's Fourth Amendment claims against them, the Individual Defendants raise the defense of qualified immunity. (*Id.*)

## II. ANALYSIS

### A. Legal Standards

#### 1. Rule 12(b)(6) Motions to Dismiss

Under Federal Rule of Civil Procedure Rule 12(b)(6), federal district courts may dismiss a claim for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under this rule, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In determining whether a complaint states a plausible claim to relief, courts "accept as true all well-pleaded factual allegations in [the] complaint." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation marks omitted). Further, courts "must liberally construe the pleadings and make all reasonable inferences in [the plaintiff's] favor[.]" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678 (2009)).

## 2. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation marks omitted). Accordingly, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 12 (quotation marks omitted).

"Because they turn on a fact-bound inquiry, qualified immunity defenses are typically resolved at the summary judgment stage rather than on a motion to dismiss." *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022) (quotation marks omitted). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion ... subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "At [this] earlier stage, it is the defendant's conduct *as alleged in the*

*complaint* that is scrutinized[.]" *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996) (emphasis in original).

When qualified immunity is raised in a Rule 12(b)(6) motion, the plaintiff must show that (1) the defendant violated her constitutional right, and (2) the right was clearly established at the time of the alleged violation. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023); *Lybrook v. Members of Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000). Courts assess whether a plaintiff has met this burden by looking to the allegations in the complaint and determining whether they plausibly describe a violation of the plaintiff's clearly established rights. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) ("To nudge their claims across the line from conceivable to plausible … plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time.") (quotation marks and citation omitted). Courts may address the two prongs of the qualified-immunity analysis in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## B. Excessive Force Claims

### 1. Officer Cordero

The Court will first address whether Plaintiff has plausibly alleged that Officer Cordero violated her clearly established Fourth Amendment rights by using excessive force against her.

#### a. *Constitutional Violation*

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Courts use an "objective reasonableness" standard to assess whether law enforcement officials used excessive force, whereby an officer's use of force is judged "from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 388, 396 (1989).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotation marks omitted). "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," and

> requires careful attention to the facts and circumstances of each particular case, including [(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.

*Id.* (quotations and citation omitted). Importantly,

> [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396-97 (quotation marks and citation omitted).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. With respect to traffic stops in particular, "once a motor vehicle has been lawfully detained for a traffic violation ... police officers may order the driver to get out of the vehicle without violating the Fourth Amendment[.]" *Arizona v. Johnson*, 555 U.S. 323, 331 (2009). "[I]t necessarily follows that [officers] can use reasonable force to execute those orders. Otherwise, the power to order the driver to exit the vehicle would be hollow." *Helvie v. Jenkins*, 66 F.4th 1227, 1238 (10th Cir. 2023).

In her response to Defendants' Motion, Plaintiff concedes that Officer Cordero had reasonable suspicion to detain her and probable cause to arrest her on the morning in question. (Doc. 30 at 1.) Officer Cordero was therefore justified in using some degree of force to effect the arrest. *Graham,* 490 U.S. at 396. Further, Officer Cordero was entitled to order Plaintiff to exit her vehicle and to use reasonable force to execute that order. *Helvie*, 66 F.4th at 1237-38. Thus, the question of whether Plaintiff's Complaint sufficiently alleges that Officer Cordero used excessive force against her turns on whether the force he used was objectively reasonable in light of all of the relevant circumstances. *Graham*, 490 U.S. at 396-97. In assessing the reasonableness of Officer Cordero's alleged actions, the Court pays particular attention to the three factors listed in *Graham* while remaining mindful of "the totality of the circumstances." *Id.*

### i. Severity of the Crime at Issue

The first *Graham* factor, "the severity of the crime at issue," *id.*, favors Plaintiff. Based on the facts alleged in the Complaint and the concessions in Plaintiff's response, Officer Cordero had reasonable suspicion to detain Plaintiff and probable cause to arrest her for driving under the influence of intoxicating liquor. *See* N.M. Stat. Ann. § 66-8-102; *see also State v. Sanchez*, 2001-NMCA-109, ¶ 6, 36 P.3d 446, 449 ("A person is under the influence of intoxicating liquor if as a result of drinking liquor the driver was less able to the slightest degree ... to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the driver and the public.") (quotations marks and brackets omitted); (Doc. 1 at ¶¶ 6, 9 (alleging that Plaintiff told Officer Cordero she had consumed alcohol prior to her single-vehicle accident).) Thus, in weighing this first factor, the Court must assess the severity of the crime of driving under the influence of intoxicating liquor.

Undeniably, drunk driving is a serious hazard. *See Begay v. United States*, 553 U.S. 137, 141 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015) ("Drunk driving is an extremely dangerous crime."). Nonetheless, the Tenth Circuit has held that misdemeanors should ordinarily be considered non-severe in weighing the first *Graham* factor. *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 764 (10th Cir. 2021); *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016). And in New Mexico, driving under the influence of intoxicating liquor is no more than a misdemeanor until the fourth time a person is convicted of the offense. *See* N.M. Stat. Ann. § 31-1-2(D), (K)-(L); N.M. Stat. Ann. § 66-8-102(E)-(G). In line with this authority, the Tenth Circuit has specifically held that the Oklahoma misdemeanor of being in actual physical control of a motor vehicle while intoxicated is non-severe and "weighs against the use of anything more than minimal force." *Wilkins v. City of Tulsa, Okla.*, 33 F.4th 1265, 1274 (10th Cir. 2022); *see also Pauly v. White*, 874 F.3d 1197, 1215 & n.5 (10th Cir. 2017) (holding that first *Graham* factor weighed in plaintiffs' favor when, "[a]t best, the [road rage] incident [at issue] might be viewed as a minor crime such as reckless driving or driving while intoxicated," both misdemeanors under New Mexico law).

Here, Plaintiff does not allege that she had ever been convicted of driving while intoxicated before the incident at issue, nor does she allege any facts that would have led Officer Cordero to reasonably suspect that she had. (*See generally* Doc. 1.) Thus, Tenth Circuit precedent requires the Court to weigh the first *Graham* factor in Plaintiff's favor. *Wilkins*, 33 F.4th at 1274; *Est. of Taylor*, 16 F.4th at 764; *Pauly*, 874 F.3d at 1215 & n.5; *Davis*, 825 F.3d at 1135. While the Court has no wish to downplay the very serious consequences of drunk driving, it finds that the first *Graham* factor weighs against Officer Cordero's use of anything more than minimal force.

### ii.   Immediate Threat to Safety of Officer or Others

The second factor, *i.e.*, "whether the suspect poses an immediate threat to the safety of the officers or others," *Graham*, 490 U.S. at 396, also weighs in Plaintiff's favor. This factor is "undoubtedly the most important and fact intensive factor in determining the objective reasonableness of an officer's use of force." *Pauly*, 874 F.3d at 1215-16 (quotation marks omitted). In evaluating this factor, the Court "must look at whether the officers or others were in danger at the precise moment that they used force." *Emmett v. Armstrong*, 973 F.3d 1127, 1136 (10th Cir. 2020) (quotation marks and brackets omitted). And importantly, because it is analyzing a motion to dismiss under Rule 12(b)(6), the Court must review whether Plaintiff posed an immediate threat to Officer Cordero or others based on the allegations in her Complaint, accepting the allegations as true and drawing all reasonable inferences in her favor. *See Hemry*, 62 F.4th at 1253; *Brokers' Choice*, 861 F.3d at 1105.

Defendants argue that the second *Graham* factor weighs in Officer Cordero's favor because his alleged encounter with Plaintiff involved "[t]he uncertainty of an intoxicated person being behind the wheel of a running automobile[.]" (Doc. 24 at 10.) But there are two flaws in this argument. First, Plaintiff has not alleged that her vehicle's engine was running, and because the Court must draw all reasonable inferences in her favor, the Court declines Defendants' invitation to infer that it was.[3]

---

[3] Defendants ask the Court to infer that Plaintiff's vehicle's engine was running based on her alleged expressed wish to avoid the cold by staying in the vehicle, which, according to Defendants, would only make sense if her vehicle's heater and thus its engine were running. (Doc. 24 at 9 n.2.) But, although one could certainly draw that inference, one could also rationally infer that the inside of Plaintiff's vehicle was warmer than the outside simply because it provided shelter from the elements.

Second, Defendants' position conflicts with how the Tenth Circuit has analyzed the safety risk that intoxicated individuals pose. While the Tenth Circuit has indeed stated that intoxicated suspects create "an additional layer of uncertainty" to consider in assessing the risk a suspect posed to an officer or others, it has also recognized that mitigating factors can weigh against finding that an intoxicated suspect posed an immediate threat. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007). Thus, the *Novitsky* court found that, despite an officer's reasonable suspicion that a suspect was intoxicated as he exited a vehicle during a welfare check, the suspect's "benign" demeanor and lack of "furtive movements" mitigated against finding that the suspect posed an immediate risk to the officer's safety. *Id.*

Officer Cordero's encounter with Plaintiff did involve a thin layer of uncertainty in light of her admission that she had consumed alcohol many hours earlier. Nevertheless, the alleged circumstances of the encounter "at the precise moment that [Officer Cordero] used force" weigh against a finding that Plaintiff posed an immediate threat to anyone. *Emmett*, 973 F.3d at 1136. Plaintiff specifically alleges that, when Officer Cordero removed her from her vehicle, she was not "conducting herself in a manner justifying [the] removal." (Doc. 1 at ¶ 11.) And her Complaint is devoid of any allegations that she made any furtive or otherwise concerning movements or behaved in any way that he could have reasonably interpreted as a threat. (*See generally id.*) The Court therefore finds Defendants' argument as to this second *Graham* factor unpersuasive and weighs the factor in Plaintiff's favor.

### iii.  Resisting Arrest or Attempting Flight

Finally, the third *Graham* factor, *i.e.*, whether the suspect "is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, weighs slightly in Plaintiff's favor. As to this factor, Plaintiff alleges that, when he pulled her from her vehicle "[w]ithout any

warning," Officer Cordero had "asked [her] to step out of her vehicle" and she had replied that "she would prefer to stay in her vehicle since it was cold outside and … she had severe arthritis in her hand." (Doc. 1 at ¶¶ 11-13.) The Court weighs this factor in Plaintiff's favor for two reasons.

First, in *Davis*, the Tenth Circuit weighed the third *Graham* factor slightly in the plaintiff's favor because she "was not actively resisting arrest or attempting to flee, even though she did not immediately obey the officers' orders." *Davis*, 825 F.3d at 1136; *see also Jordan v. Jenkins*, 73 F.4th 1162, 1173 (10th Cir. 2023) (holding that third *Graham* factor favored plaintiff where officer asked plaintiff to put his hands behind his back "just one time" before grabbing his arm and tackling him to ground). Likewise, here, accepting her allegations as true and viewing them in her favor, Plaintiff was not actively resisting arrest or trying to flee when Officer Cordero pulled her from her vehicle without warning, even though she did not immediately obey Officer Cordero's first and only command to exit the vehicle and expressed a preference not to do so.

Second, even when a suspect actively resists arrest, the resistance does not entitle an officer to use unlimited force. Rather, an officer may only use force proportionate to the level of the suspect's resistance. *See Surat v. Klamser*, 52 F.4th 1261, 1267, 1275-76 (10th Cir. 2022) (weighing third *Graham* factor in suspect's favor where large male officer employed takedown maneuver in response to small female suspect pawing at him and trying to pry officer's fingers from her arm). Thus, even if Plaintiff's stated preference to remain in her vehicle could be considered active resistance, the third *Graham* factor would only favor the use of minimal force in response to her minimal resistance. (Doc. 1 at ¶ 24.)

In sum, taking Plaintiff's well-pled factual allegations as true and drawing all reasonable inferences in her favor, the Court weighs each of the *Graham* factors in Plaintiff's favor and finds that she has plausibly alleged that Officer Cordero violated her Fourth Amendment right to be free

from the use of excessive force against her.[4] *See Iqbal*, 556 U.S. at 678; *Graham*, 490 U.S. at 396-97; *Brokers' Choice*, 861 F.3d at 1105; *Schrock*, 727 F.3d at 1280. Accordingly, the Court turns to the question of whether the alleged constitutional right at issue was clearly established.

> b. *Clearly Established Law*

Although the Court holds that Officer Cordero's alleged conduct violated Plaintiff's constitutional right to be free from excessive force, Plaintiff cannot defeat Officer Cordero's qualified immunity defense unless the Court also determines that this right was "clearly established." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). As a preliminary matter, the Court must consider Plaintiff's failure to address this prong of Defendants' qualified immunity defense in her response to their Motion. (*See generally* Doc. 30.) Defendants argue that, because Plaintiff's response "fails to cite a single piece of applicable case law capable of demonstrating that the facts pled in her Complaint constitute the violation of a well-established right," she has "failed to meet the burden necessary to defeat Defendants' qualified immunity" defense. (Doc. 32 at 1, 3 (citing *Patrick v. Miller*, 953 F.2d 1240, 1243 (10th Cir. 1992).)

The Court agrees that Plaintiff's response is completely lacking in this regard. (*See generally* Doc. 30.) However, the Court declines to dismiss her excessive force claim against Officer Cordero based on her inadequate briefing. In *Elder v. Holloway*, 510 U.S. 510 (1994), the

---

[4] In their reply in support of their Motion, Defendants argue that "the Court's analysis of the *Graham* factors should be similar to that performed in" *Valencia v. De Luca*, 612 F. App'x 512 (10th Cir. 2015). (Doc. 32 at 5.) In that case, the plaintiff alleged that officers used excessive force against him during a traffic stop when they pulled him out of his vehicle using "pressure points" and "leverage techniques" after they developed reasonable suspicion of marijuana use. *Id.* at 515-16, 519. The *Valencia* court affirmed the district court's grant of summary judgment in the officers' favor based on qualified immunity. *Id.* at 518-19. However, the facts in *Valencia* are materially distinguishable from those alleged in Plaintiff's Complaint. Specifically, in *Valencia*, the plaintiff refused several lawful orders, including repeated orders to exit his vehicle, before the contested use of force began, and physically resisted officers' initial efforts to remove him from the vehicle. *See id* at 515. Further, the plaintiff had been actively obstructing the officers' investigation of one of his passengers. *See id.*

Supreme Court instructed that a reviewing court should "use its full knowledge of its own and other relevant precedents" to determine whether a right is clearly established. *Id.* at 516 (quotation marks and brackets omitted). The *Elder* court observed that a rule barring courts from considering uncited cases would not further the central purpose of qualified immunity, *i.e.*, "to protect [public officials] from undue interference with their duties and from potentially disabling threats of liability," because the operation of such a rule would be "unpredictable in advance of the district court's adjudication." *Id.* at 514-15 (quotation marks omitted). Moreover, the *Elder* court reasoned, such a rule would not "further the interests on the other side of the balance: deterring public officials' unlawful actions and compensating victims of such conduct. Instead, it simply releases defendants because of shortages in counsel's or [a lower] court's legal research or briefing." *Id.* at 515. Citing *Elder*, the Tenth Circuit has likewise stated that a court's review of whether a right is clearly established "requires consideration of all relevant case law," not just cases cited by the plaintiff. *Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021).

While *Elder*'s holding was specifically directed to courts of appeal, its reasoning applies equally to district courts, and district courts in the Tenth Circuit have cited *Elder* as instructing them to apply their own knowledge of existing caselaw to the "clearly established" prong of a qualified immunity defense. *See, e.g., Jiron v. Roth*, 519 F. Supp. 3d 971, 1003 (D.N.M. 2021); *Buckley v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 2005 WL 2359475, at \*7 (D. Colo. Sept. 19, 2005). Accordingly, the Court will apply its own knowledge of existing caselaw in deciding whether Officer Cordero's alleged actions violated Plaintiff's clearly established constitutional rights.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11

(quotation marks omitted). Ordinarily, this means that there must be "an on-point Supreme Court or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct[.]" *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (brackets omitted). A prior decision need not be "directly on point," but it "must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12. "[T]he Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (ellipsis omitted). Rather, courts "should define the 'clearly established' right at issue on the basis of the specific context of the case." *Tolan*, 572 U.S. at 657 (quotation marks omitted). "Such specificity is especially important in the Fourth Amendment context, where … it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12 (quotation marks and brackets omitted).

However, "[b]ecause the existence of excessive force is a fact-specific inquiry ... there will almost never be a previously published opinion involving exactly the same circumstances," *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quotation marks omitted), and the Tenth Circuit has "recognized that the concept of clearly established law should not be applied too literally." *Johnson v. Martin*, 195 F.3d 1208, 1216 (10th Cir. 1999). "[A] right is clearly established when [Circuit] precedent encompasses materially similar conduct or applies with obvious clarity to the conduct at issue."[5] *Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022) (quotation marks omitted).

---

[5] Although the Tenth Circuit has in the past applied a "sliding scale" approach to assessing clearly established law, and this approach "still exists in [its] precedent," the Supreme Court "has recently limited the application of such an approach" and the Tenth Circuit's "recent cases have moved away from that rubric—questioning its viability." *Sanchez v. Guzman*, 105 F.4th 1285, 1292 n.1 (10th Cir. 2024) (brackets omitted). Rather, the Tenth Circuit's "more recent jurisprudence has shifted to consider 'obvious clarity' or 'flagrantly unlawful conduct' rather than engage in the sliding scale approach." *Id.*

Thus, though "the clearly established law must be particularized to the facts of the case," *Knopf v. Williams*, 884 F.3d 939, 947 (10th Cir. 2018), plaintiffs are "not require[d] … to engage in a scavenger hunt for a prior case with identical facts." *Shepherd*, 55 F.4th at 815; *see also Johnson*, 195 F.3d at 1216 (holding that there need not "be a case presenting the exact fact situation at hand in order to give parties notice of what constitutes actionable conduct"). Rather, the pertinent question is "whether existing law provides fair warning" to the defendant that what he is doing is unlawful. *Shepherd*, 55 F.4th at 815.

The case of *McWilliams v. Dinapoli*, 40 F.4th 1118 (10th Cir. 2022), presents a salient example of the Tenth Circuit relying on non-identical precedent to find a particularized clearly established right to be free from excessive force. Prior to the *McWilliams* decision, the Tenth Circuit decided *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007), a case that involved an officer who grabbed and tackled a plaintiff from behind without warning after the plaintiff unlawfully removed a file from a municipal courthouse and failed to comply with the officer's commands while he was trying to return it. *Id.* at 1280. The *Casey* court held that, because under *Graham* "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest," it was clearly established that the officer "should, at a minimum, have ordered [the plaintiff] to submit to an arrest or used minimal force to grab him while informing him that he was under arrest." *Id* at 1282, 1285.

The *McWilliams* case involved a different set of circumstances; there, an officer became involved in a heated verbal exchange with the plaintiff, whom the officer suspected of trespassing, after the officer grabbed or hit a cigarette out of the plaintiff's hand. *McWilliams*, 40 F.4th at 1122. When the plaintiff approached the officer and began yelling and gesturing, the officer punched, tackled, and chocked him without warning. *Id.* Relying on the proposition stated in *Casey* that

15

force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest, the *McWilliams* court found that the officer in that case had fair warning "that he had to (1) inform [the plaintiff] that he was under arrest and (2) give him an opportunity to submit peacefully before using more than minimal force." *Id.* at 1129; *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1152, 1161 (10th Cir. 2008) (citing *Casey* to affirm denial of qualified immunity from excessive force claims on summary judgment where officers fired nonlethal projectile at nonviolent protester, took him to ground, dragged him down street, and forced his hand and forearm into "hyperflexion").

Here, the Court must decide whether Officer Cordero, who had reason to believe Plaintiff had driven while intoxicated, had fair warning that he would violate Plaintiff's constitutional rights by forcefully pulling her from her vehicle and slamming her to the ground immediately after she stated a preference not to obey his single command to exit her vehicle. The Court first notes that there appears to be no Tenth Circuit case presenting facts identical to those alleged in the Complaint. One case does involve several similar pertinent facts. Specifically, in *Davis*, the Tenth Circuit held that officers violated the plaintiff's clearly established right to be free from excessive force during a traffic stop by allegedly breaking the plaintiff's car window, pulling her through the window by her arms and hair, and pinning her face-down on the ground after she failed to obey several commands to exit the vehicle. *Davis*, 825 F.3d at 1134, 1136-38. As in the present case, the officers in *Davis* suspected the plaintiff of a misdemeanor, the plaintiff did not pose an immediate threat to officers or others, and the plaintiff was not actively resisting arrest. *See id.* at 1135-36. However, *Davis* is distinguishable from the present case, most particularly because of the greater amount of force the officers used in that case.

Nonetheless, the Court finds that the holdings in *Casey, McWilliams*, and *Davis* gave Officer Cordero fair warning that the force he allegedly used was constitutionally excessive. These

16

cases put Officer Cordero on notice that "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest," *Davis,* 825 F.3d at 1137, and that "officers must give a warning or a chance to submit to arrest before using violent force against suspected misdemeanants who are not violent, aggressive, or fleeing." *McWilliams*, 40 F.4th at 1130. And here, as discussed in Section II.B.1.a., *supra*, Plaintiff was allegedly a nonviolent misdemeanant who posed no immediate threat to Officer Cordero or others and was not actively resisting arrest or trying to flee, yet Officer Cordero used violent force against her without giving her warning or a chance to submit to arrest, pulling her from her vehicle and slamming her to the ground with such force as to injure her. Plaintiff has therefore alleged that Officer Cordero violated a clearly established constitutional right.

Having plausibly alleged that he violated her clearly established right to be free from excessive force, Plaintiff has made a sufficient showing to defeat Officer Cordero's qualified immunity defense at this stage of the litigation. *See Behrens,* 516 U.S. at 309; *Hemry,* 62 F.4th at 1253. The Court will therefore deny Defendants' Motion insofar as it asks the Court to dismiss the excessive force claim against Officer Cordero in his individual capacity on the basis of qualified immunity.

2.   Officers Sanchez and Newman

Plaintiff provides far fewer details about the conduct of Officers Sanchez and Newman than she does about Officer Cordero's conduct. Specifically, as to Officers Sanchez and Newman, Plaintiff alleges only that: (1) these officers "arrived at the scene sometime around the time that Plaintiff was being ejected from her vehicle"; (2) "Plaintiff hit her head on the pavement as the officer and/or officers forced her to the ground" using "force … so great [she] sustained shoulder injuries and other injuries"; and (3) "Defendants Cordero, Sanchez, and Newman used excessive

physical force in seizing and detaining Plaintiff on January 29, 2021, including but not limited to forcefully pulling her from her vehicle, slamming her onto the ground, and handcuffing her." (Doc. 1 at ¶¶ 13-14, 24.) Defendants argue that Plaintiff's excessive force claims against Officers Sanchez and Newman should be dismissed based on qualified immunity because these sparse allegations do not give them adequate notice of the charges against them and fail to allege a violation of a clearly established constitutional right. (Doc. 24 at 6-11; Doc. 32 at 4-7.) As explained below, because Plaintiff's Complaint does not plausibly allege that Officers Sanchez and Newman committed a constitutional violation, the Court will dismiss the excessive force claims against them.

### a.  Sufficient Notice in the Complaint

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S.at 555 (ellipsis and quotation marks omitted). Although courts apply

> the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally, complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation.

*Robbins*, 519 F.3d at 1249 (citation and quotation marks omitted).

Hence, in a case in which a defendant raises a qualified immunity defense, "it is incumbent upon a plaintiff to identify *specific* actions taken by *particular* defendants in order to make out a viable § 1983 ... claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (emphases in original) (quotation marks omitted); *see also Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th

Cir. 2018) (holding that a "complaint must isolate the allegedly unconstitutional acts of each defendant; otherwise the complaint does not provide adequate notice as to the nature of the claims against each") (quotation marks omitted). Without such allegations, "it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim" against a particular defendant "is clearly established." *Robbins*, 519 F.3d at 1249.

Generic and obviously incorrect allegations that patently different types of defendants engaged in the same type of misconduct fail to meet the fair notice requirement. In *Robbins*, for example, the Tenth Circuit held that a complaint did not satisfy Rule 8 because it used "either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom," even though "the allegedly tortious acts" of the various defendants had to be "entirely different in character" by virtue of the respective roles they played. *Id.* at 1250. Thus, it was "impossible for any of these individuals to ascertain what particular unconstitutional acts they [were] alleged to have committed." *Id.*

However, when a complaint adequately identifies which actions it attributes to which defendants, allegations encompassing all defendants are not grounds for dismissal. Thus, in *Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008),[6] the Tenth Circuit upheld the denial of a motion to dismiss, reasoning that, although the plaintiff's complaint included "multiple claims against multiple defendants, there [was] no confusion" about which defendants were the targets of a factual allegation that encompassed the "[d]efendants" generally. *Id.* The *Briggs* court so found based on other parts of the complaint that clearly identified the allegation's targets. *Id.*

---

[6] Unpublished decisions are not binding precedent in the Tenth Circuit but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

Similarly, in *Ferguson v. Board of County Commissioners of Sierra County*, 2013 WL 12334214, at *5 (D.N.M. Apr. 2, 2013), the court rejected the defendants' argument, in a motion to dismiss, that the complaint's use of the term "and/or" in listing defendants failed to adequately isolate each defendant's unconstitutional acts. As the *Ferguson* court explained, the complaint in that case differed from the *Robbins* complaint because it listed specific defendants when using "and/or," and these lists generally involved "the same type of defendants." *Id.* Thus, the *Ferguson* court observed, the defendants had "direct notice of the conduct for which [they were] being considered liable." *Id.*

Here, Plaintiff's Complaint includes sufficient allegations to put Officers Sanchez and Newman on notice of the conduct for which Plaintiff claims they are liable. Specifically, she alleges that, along with Officer Cordero, these officers "forcefully pull[ed] her from her vehicle, slamm[ed] her onto the ground, and handcuff[ed] her." (Doc. 1 at ¶ 24.) These allegations do not implicate the *Robbins* court's concern about generic, obviously incorrect allegations that patently different types of defendants engaged in the same types of misconduct. *See Robbins*, 519 F.3d at 1250. Moreover, Plaintiff's specific factual allegation about when Officers Sanchez and Newman arrived at the scene allows these officers to discern which actions Plaintiff attributes to them with reasonable clarity, notwithstanding her use of "and/or" to identify who slammed her to the ground. *See Briggs*, 274 F. App'x at 736; *Ferguson*, 2013 WL 12334214, at *5.

### b.  Constitutional Violation

While the Complaint adequately puts Officers Sanchez and Newman on notice of the excessive force claims against them, that is not the end of the Court's inquiry. Rather, the officers' invocation of qualified immunity requires the Court to also determine whether Plaintiff has plausibly alleged that each of these officers violated her Fourth Amendment right to be free from

excessive force and that this right was clearly established at the time. *See Hemry*, 62 F.4th at 1253; *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010).

As noted in Section II.B.1.a., *supra*, to determine whether an officer has violated a plaintiff's right to be free from excessive force, courts examine the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. In other words, "[e]xcessive force claims are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 428 (2017) (ellipsis omitted). Thus, in analyzing Plaintiff's allegations against Officers Sanchez and Newman in light of the *Graham* factors, the Court views the facts from these officers' perspective based on the information they had.

As discussed in Section I., *supra*, Plaintiff alleges that Officers Sanchez and Newman arrived at the scene of the encounter in question "sometime around the time that Plaintiff was being ejected from her vehicle." (Doc. 1 at ¶ 13.) Critically, Plaintiff's Complaint includes no factual allegations tending to show that these officers were aware that Plaintiff was suspected of committing a misdemeanor, had not actively resisted arrest or tried to flee, and posed no immediate threat to anyone. (*See generally id.*) Rather, viewed from these officers' perspective, what they allegedly knew when they used force against Plaintiff was that Officer Cordero was forcibly removing her from her vehicle and she was begging him to stop. (*See id.* at ¶¶ 13-14.)

Faced with these volatile circumstances and limited information, it was objectively reasonable, though mistaken, for Officers Sanchez and Newman to make the split-second decision to use the force alleged in the Complaint to help Officer Cordero gain physical control over Plaintiff, bring an end to her apparent resistance, and mitigate the apparent safety risks that the unstable situation posed. *See Waters v. Coleman*, 632 F. App'x 431, 438 (10th Cir. 2015) (finding

21

that officer was entitled to qualified immunity where he tased plaintiff after arriving at scene to find fellow officer tasing plaintiff because, "even if the [first] officer was mistaken in his belief that [the plaintiff] was resisting, the belief was not unreasonable under the circumstances"); *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *receded from on other grounds by Pearson*, 555 U.S. at 223 ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back … the officer would be justified in using more force than in fact was needed."). In short, Plaintiff has failed to plausibly allege that Officers Sanchez and Newman violated her Fourth Amendment rights by using objectively unreasonable force against her, and the Court will therefore dismiss her excessive force claims against these officers without prejudice to her ability to file a timely and properly supported motion to amend.

### C.  Conspiracy to Violate Civil Rights Claims

In Count VII of her Complaint, titled "Conspiracy to Violate Civil Rights Against All Defendants," Plaintiff alleges that "Defendant Cordero unlawfully … used excessive force against [Plaintiff] … with the full knowledge, consent, and agreement of Defendant [NMSP] or its employees and/or agents" and that the NMSP "was therefore a willful participant with Defendant Cordero in the joint violation of Plaintiff's constitutional rights[.]" (Doc. 1 at ¶¶ 58-59.) Because Plaintiff has stipulated to the dismissal of all claims against the NMSP and the Individual Defendants in their official capacity, (*see* Doc. 30 at 2-3), the Court considers only whether Plaintiff's allegations state a conspiracy claim against the Individual Defendants in their individual capacities. Further, because Defendants have invoked qualified immunity to dismiss Plaintiff's Section 1983 claims, Plaintiff bears the burden of demonstrating that her factual allegations state a claim for conspiracy to violate her constitutional rights. *See Hemry*, 62 F.4th at 1253; *Frasier v. Evans*, 992 F.3d 1003, 1024-25 (10th Cir. 2021).

22

A plausibly alleged deprivation of a constitutional right is necessary but not sufficient to state a Section 1983 conspiracy claim. *Snell v. Tunnell*, 920 F.2d 673, 701–02 (10th Cir. 1990). In addition, a plaintiff must "allege specific facts showing … an agreement upon a common, unconstitutional goal, and concerted action taken to advance that goal." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (quotation marks and citation omitted). A plaintiff may establish the requisite agreement by "direct or circumstantial evidence." *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004). However, "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Frasier*, 992 F.3d at 1024.

In her response to Defendants' Motion, Plaintiff argues that her allegations make out a conspiracy claim because "there was an actual deprivation of her constitutionally protected right to be free from excessive force by all named Defendants." (Doc. 30 at 2.) But while the Court agrees that Plaintiff's Complaint sufficiently alleges that Officer Cordero deprived her of her constitutional right to be free from excessive force, more is required of her if she is to state a Section 1983 conspiracy claim. Specifically, she must also allege acts allowing the Court to infer that two or more Individual Defendants reached an agreement to further the unconstitutional goal of depriving her of that right. *Bledsoe*, 53 F.4th at 609.

Nothing in Plaintiff's Complaint allows the Court to infer such an agreement. First, Plaintiff's allegation that Officer Cordero entered into an agreement with the NMSP to deprive her of her rights is wholly conclusory, and the Court will disregard it. *Warnick*, 895 F.3d at 751. Second, her factual allegations about Officers Sanchez and Newman are simply too sparse to support the inference that either of these officers reached an agreement with one another or Officer Cordero to use excessive force against her. *Salehpoor*, 358 F.3d at 789; *Bledsoe*, 53 F.4th at 609. Plaintiff has therefore failed to plausibly allege that the Individual Defendants conspired to deprive

23

her of her constitutional rights and the Court will dismiss her conspiracy claims without prejudice to her ability to file a timely and properly supported motion to amend.

### D.  Imperfect Service Under Rules 4(m) and 12(b)(4) and (5)

The Court last turns to Defendants' arguments that Plaintiff's Complaint should be dismissed under Federal Rules of Civil Procedure 4(m) and 12(b)(4) and (5) for improper service of process. (Doc. 24 at 2, 14-15.) Because the Court will dismiss all of the claims in Plaintiff's Complaint other than the Fourth Amendment excessive force claim against Officer Cordero in his individual capacity, as explained in Section II.B. and C., *supra*, the Court limits its analysis in this Section to Plaintiff's arguments relating to Officer Cordero.

"Effectuation of service is a precondition to suit." *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998). Thus, Federal Rule of Civil Procedure 12(b) "allow[s] a defendant to defend against a claim on the grounds of insufficiency of process and insufficiency of service of process." *Whitsell v. United States*, 198 F.3d 260, at *1 (10th Cir. 1999) (unpublished). A Rule 12(b)(4) motion "constitutes an objection to the form of process or the content of the summons," while a Rule 12(b)(5) motion "challenges the mode or lack of delivery of a summons and complaint." *Martinez v. CitiMortgage, Inc.*, 347 F. Supp. 3d 677, 686 (D.N.M. 2018). "The plaintiff has the burden ... of establishing the validity of the service of process[.]" *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). A signed return of service provides prima facie evidence of valid service. *United States v. Parcel of Real Est. Located at 62 Valle Hermosa Rd., Sandia Park, New Mexico*, 2007 WL 9733730, at *3 (D.N.M. June 7, 2007).

Defendants argue that the Court should dismiss Plaintiff's claims under Rule 12(b)(4) because the proofs of service submitted to the Court, including the proof of service on Officer Cordero, "do not assert that a copy of the Complaint was provided along with the summons." (Doc.

24

24 at 14); *see* Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint.").

Plaintiff responds that the form used to serve Defendant Cordero was "the standard 'Summons in a Civil Action,'" which directs the recipient to file and serve a pleading responsive to "the attached complaint." (Doc. 30 at 3.) After reviewing the proof of service for Officer Cordero, (Doc. 8), the Court agrees with Plaintiff that this standard form adequately shows that the process served included the Complaint. The Court thus rejects Officer Cordero's Rule 12(b)(4) argument based on insufficient process.

In support of their Rule 12(b)(5) motion, in turn, Defendants argue that Plaintiff failed to serve Officer Cordero properly because she served a NMSP lieutenant and did not serve the state attorney general.[7] (Doc. 24 at 14-15.) Plaintiff responds that she followed state law by serving a NMSP lieutenant because New Mexico's procedural rules allow a plaintiff to serve a defendant "by delivering a copy of the process at the actual place of business or employment of the defendant to the person apparently in charge thereof." (Doc. 30 at 3.)

Plaintiff's argument is without merit. It is true that, under Federal Rule of Civil Procedure 4(e), a plaintiff may serve an individual defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). But Plaintiff has failed to show that her service of process on Officer Cordero complied with New Mexico law for two reasons.

First, New Mexico law only permits service at an individual defendant's place of business or employment after the plaintiff has tried to: (1) serve the defendant personally or by mail or

---

[7] Defendants also argue that "at least one of the individually named Defendant officers is no longer employed by the NMSP." (Doc. 24 at 15.) However, they do not indicate whether this argument applies to Officer Cordero, so the Court will disregard it. (*See id.*; Doc. 32 at 9.)

commercial courier service, return receipt requested; *and*, (2) leave a copy of process with a person residing at the defendant's usual place of abode and mail a copy of process to the defendant's last known mailing address. N.M. R. Civ. P. 1-004(E)(3), (F)(1)-(3). Because there is no evidence that Plaintiff has ever tried to serve Officer Cordero personally, by mail or commercial courier service, or by leaving a copy of process with someone residing at his usual abode, Plaintiff has failed to show that her attempt to serve Officer Cordero by serving a NMSP lieutenant was proper. *Id.*; *Oaklawn Apartments*, 959 F.2d at 174.

Second, New Mexico law requires that a plaintiff suing "an officer, official, or employee of the state or one of its branches, agencies, bureaus, departments, commissions or institutions" must serve not only the officer, official, or employee, but also the New Mexico Attorney General. N.M. R. Civ. P. 1-004(H)(1)(c). Here, Plaintiff has alleged that Officer Cordero was "at all relevant times … [a] law enforcement officer[] employed by the [NMSP], a governmental agency operated by the State of New Mexico." (Doc. 1 at ¶ 4.) Yet there is no evidence in the record that Plaintiff has ever tried to serve the attorney general. For this reason as well, Plaintiff has failed to meet her burden to show that her service of process on Officer Cordero was proper. N.M. R. Civ. P. 1-004(H)(1)(c); *Oaklawn Apartments*, 959 F.2d at 174.

"[W]hen a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983). There does not appear to be any reason why Plaintiff could not cure the defects in her service of process on Officer Cordero. The Court will therefore quash the contested service and order Plaintiff to properly serve Officer Cordero with process by the deadline set forth below.

### III. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Doc. 24) is GRANTED IN PART and DENIED IN PART as follows.

1. Defendants' request that the Court dismiss Plaintiff's Fourth Amendment excessive force claim against Officer Cordero in his individual capacity, as asserted in Count I of the Complaint, is DENIED.

2. Defendants' request that the Court dismiss the remaining claims in Plaintiff's Complaint is GRANTED, in that:

   a. The following claims are DISMISSED WITHOUT PREJUDICE:  (1) Plaintiff's Fourth Amendment excessive force claims against Defendants Newman and Sanchez in their individual capacities, as asserted in Count I; and, (2) Plaintiff's Section 1983 excessive force conspiracy claims against Defendants Cordero, Newman, and Sanchez in their individual capacities, as asserted in Count VII; and,

   b. The following claims are DISMISSED WITH PREJUDICE on Plaintiff's stipulation: (1) all of Plaintiff's Section 1983 claims against the NMSP; (2) all of Plaintiff's Section 1983 claims against the Individual Defendants in their official capacity; and, (3) Counts II, III, IV, V, and VI of Plaintiff's Complaint.

3. Plaintiff must serve Officer Cordero with process and file proof of such service in compliance with the Federal Rules of Civil Procedure and this Court's Local Rules on or before **Friday, October 11, 2024.**

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

27